UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ASAM ALHAYOTI, | Case No. 21-cv-07713-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| ANTONY BLINKEN, et al., | Re: ECF No. 32 |
| Defendants. | |

## INTRODUCTION

The plaintiff worked for the U.S. Embassy in Sana'a, Yemen, and the U.S. Department of State paid him the local prevailing wage under its internal policies.[1] After the Embassy closed following the outbreak of war in Yemen, the plaintiff, who holds citizenship in the United States and Yemen, returned to the U.S., but continued to receive a salary based on the prevailing wage in Yemen.[2] The plaintiff claims that the defendant (Antony Blinken, in his official capacity as Secretary of the U.S. Department of State) discriminated against him and thereby violated (1) the

---

[1] First Am. Compl. (FAC) – ECF No. 25 at 4, 16, 28–29 (¶¶ 6, 14). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 4, 7–13 (¶¶ 6, 9–11).

ORDER – No. 21-cv-07713-LB

1  Department's internal policies, (2) the Worker Adjustment and Retraining Notification or WARN

2  Act, and (3) Title VII of the Civil Rights Act of 1964.[3]

3  Title VII provides the exclusive basis for relief. Therefore, the claims based on the

4  Department's internal policies and the WARN Act are dismissed with prejudice. The plaintiff's

5  Title VII claim also fails because it is based on a nonactionable theory that the plaintiff was

6  entitled to extra benefits relative to other local employees in Yemen because of his U.S.

7  citizenship. The plaintiff does not claim that the department treated him poorly because of his race

8  or national origin. Instead, he claims that the Department should have treated him better because

9  of his U.S. citizenship. Such claims are not actionable because citizenship is not a protected

10 classification under Title VII. *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 95 (1973). But,

11 given that the plaintiff's administrative complaint accused some Department superiors of having a

12 "nasty attitude" toward him and "Yemeni, non-citizen staff," the defects with the plaintiff's

13 complaint may be curable. Thus, the complaint is dismissed with leave to amend.

## STATEMENT

16 The plaintiff is a dual citizen of the United States and Yemen.[4] In 2010, the Department hired

17 the plaintiff as a Foreign Service National Investigator at the U.S. Embassy in Sana'a, Yemen,

18 under the local employee "LE" staff category.[5] The local-employee designation meant that the

19 plaintiff was paid the local prevailing wage in Yemen.[6] Because the plaintiff was also a U.S.

20 citizen, the Foreign Service Act guaranteed that — even though he was hired in the local

21 employee category — he received no less than the federal minimum wage.[7]

---

[3] *Id.* at 18–31.

[4] *Id.* at 4, 16 (¶¶ 6, 14); Admin. Compl. to Off. of Civ. Rts., Ex. to FAC – ECF No. 25-1 at 3.

[5] FAC – ECF No. 25 at 4 (¶ 6); Admin. Compl. to Off. of Civ. Rts., Ex. to FAC – ECF No. 25-1 at 3.

[6] FAC – ECF No. 25 at 4 (¶ 6); Admin. Compl. to Off. of Civ. Rts., Ex. to FAC – ECF No. 25-1 at 3; Mot. – ECF No. 32 at 9 (citing 22 U.S.C. § 3968(a)(1)); U.S. Dep't of State, 3 Foreign Affs. Manual § 7121, https://fam.state.gov/.

[7] Mot. – ECF No. 32 at 9–10 (citing 22 U.S.C. § 3968(a)(1)).

United States District Court
Northern District of California

The local-employee category contrasts with the direct-hire-employee category because direct-hire employees are appointed by the Secretary of State under general U.S. Government appointment rules.[8] Direct-hire employees generally receive higher pay.[9] According to the State Department, "[t]here is no process for a transfer from LE Staff to a U.S. direct hire position."[10]

As a local employee, the plaintiff performed well and, in general, exceeded the expectations of his superiors. For instance, the plaintiff received a certificate commending his work helping "to find a kidnapped American [c]itizen."[11] The complaint also includes an approved award nomination recognizing the plaintiff's "enduring contributions" to the Regional Security Office's efforts to protect U.S diplomatic facilities in Sana'a.[12]

The U.S. Embassy in Sana'a suspended operations in February 2015, and United States direct-hire employees were evacuated.[13] In March 2015, the plaintiff sent his wife and children back to the United States.[14] The plaintiff remained in Yemen working for the Department until October 2015, when he too returned to the United States.[15]

After arriving back in the United States, he continued to work for the Department by communicating with contacts in Yemen by phone.[16] Nonetheless, the Department placed the plaintiff on "non-caretaker" or inactive status.[17] At the end of October 2015, the Department

---

[8] Off. of Civ. Rts., Investigative Rep., Ex. to FAC – ECF No. 25-1 at 111; U.S. Dep't of State, 3 Foreign Affs. Manual § 7121, https://fam.state.gov.

[9] EEO Investigative Aff., Ex. to FAC – ECF No. 25-1 at 258.

[10] Admin. Compl. to Off. of Civ. Rts., Ex. to FAC – ECF No. 25-1 at 10.

[11] *Id.* at 4.

[12] *Id.* at 14–16.

[13] FAC – ECF No. 25 at 4–5 (¶ 7); Admin. Compl. to Off. of Civ. Rts., Ex. to FAC – ECF No. 25-1 at 12; Mot. – ECF No. 32 at 10.

[14] FAC – ECF No. 25 at 4–5 (¶ 7).

[15] *Id.* at 7 (¶ 9).

[16] *Id.*

[17] *Id.* at 7–8 (¶ 9).

offered the plaintiff a Temporary Duty Travel assignment in Saudi Arabia, but the plaintiff asked for a posting in Djibouti or Muscat, Oman instead.[18]

The plaintiff alleges that by summer 2016, he realized that he would not get a Temporary Duty Travel assignment in a "neutral country" and asked Special Agent Jeremy Clark for better pay and benefits.[19] Mr. Clark helped the plaintiff obtain a part-time consulting position with a private company, AC4S.[20] The plaintiff worked for AC4S in 2017 but found the pay inadequate.[21] AC4S ended the plaintiff's employment in 2017 in view of the continuing war in Yemen.[22]

In the "spring of 2018," the plaintiff received a "Reduction In Force" notice and, in June 2019, the Department terminated him.[23] The "Ending of Employment Notice" said that the plaintiff began his employment in April 2010 and was employed as a Defensive Security Coordinator.[24]

The plaintiff began communicating with the EEOC in 2018, and in April 2019, the plaintiff filed an administrative complaint alleging employment discrimination.[25] He alleged that "[i]n both of [his] official positions, [he] was paid less than a US citizen direct hire[] would have been paid for the same job description."[26] He asserted that he should have been paid an annual salary of at least approximately $121,956 per year, rather than a $14.45 hourly wage.[27] After investigating the claims in the plaintiff's administrative complaint, the Department issued a Final Decision dismissing all the plaintiff's claims in March 2020.[28] The plaintiff appealed the decision.[29] In July

---

[18] EEO Investigative Aff., Ex. to FAC – ECF No. 25-1 at 137–38.

[19] FAC – ECF No. 25 at 9 (¶ 10); EEO Investigative Aff., Ex. to FAC – ECF No. 25-1 at 138.

[20] FAC – ECF No. 25 at 9–10 (¶ 10).

[21] *Id.* at 10 (¶ 10).

[22] *Id.*

[23] *Id.* at 11 (¶ 11); Notice, Ex. to FAC – ECF No. 25-3 at 1–2.

[24] Notice, Ex. to FAC – ECF No. 25-3 at 1–2.

[25] FAC – ECF No. 25 at 14–15 (¶¶ 12–13); Letter from Off. of Civ. Rts., Ex. to FAC – ECF No. 25-1 at 53.

[26] EEO Investigative Aff., Ex. to FAC – ECF No. 25-1 at 258.

[27] *Id.* at 152.

[28] Final Agency Decision, Ex. A to Mot. – ECF No. 32-1 at 7–46; EEOC Decision on Appeal of Agency Decision, Ex. B to Mot. – ECF No. 32-1 at 48–55.

[29] EEOC Decision, Ex. B to Mot. – ECF No. 32-1 at 48.

2021, the EEOC affirmed the Final Decision after concluding that the Department "articulated legitimate and nondiscriminatory reasons for its conduct."[30]

The plaintiff filed his original complaint in October 2021.[31] In the current complaint, he alleges that the Department discriminated against him because it did not follow internal policies d in the Foreign Affairs Manual.[32] He claims that the Department should have increased his pay to account for additional responsibilities, paid for overtime hours, and reclassified him under a temporary-duty travel contract when he returned to the United States.[33]

The plaintiff's theory is that he was entitled to special treatment relative to other local employees in Yemen because of his U.S. citizenship. For example, the plaintiff asserts that his superiors' "inaction describes the mindset that [he] was no more entitled to this protection than the Yemeni staff that were not U.S. [c]itizens."[34]

The plaintiff asserts six claims. The first four claims are based on violations of the Foreign Affairs Manual: (1) failure of supervisors to adjust the plaintiff's employment status (3 Foreign Affs. Manual § 7312); (2) failure to ensure the plaintiff's safety after operations were suspended at the U.S. Embassy in Yemen (3 Foreign Affs. Manual § 7173); (3) wrongfully designating the plaintiff as inactive or on non-caretaker status (3 Foreign Affs. Manual § 7383.1); and (4) failure to notify the plaintiff of the destruction of his employee file (3 Foreign Affs. Manual § 2351.5). The last two claims, claims five and six, are based on (1) the failure to provide notice of an impending layoff in violation of the Worker Adjustment and Retraining Notification or WARN Act and (2) a violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e).[35]

---

[30] *Id.* at 52.

[31] Compl. – ECF No. 1.

[32] FAC – ECF No. 25 at 18–26.

[33] *Id.* at 8 (¶ 9), 14 (¶ 12), 18.

[34] *Id.* at 22.

[35] *Id.* at 18–31.

1    The Department moved to dismiss all the plaintiff's claims under Rule 12(b)(6).[36] It contends

2    that Title VII is the exclusive ground for relief and that the plaintiff's allegations do not establish a

3    plausible Title VII claim.[37] It argues that the plaintiff's claims are based on citizenship, not

4    national origin or race, and that there are no allegations supporting a disparate impact theory.[38]

5    The court judicially notices (1) the materials attached to and referenced in the plaintiff's

6    complaint and (2) the agency decisions attached to the defendant's motion.[39] The parties consented

7    to magistrate-judge jurisdiction.[40] The court can decide the matter without oral argument. N.D.

8    Cal. Civ. L.R. 7-1(b).

## ANALYSIS

The plaintiff's complaint fails to state a claim against the Department. The only legal basis for the plaintiff's claims is Title VII, and the facts alleged in the complaint do not state a plausible Title VII claim. The plaintiff's theory — that his U.S. citizenship entitled him to additional benefits relative to non-citizens — is not actionable. Furthermore, the plaintiff has not alleged facts plausibly showing that the Department's distinction between local employees and direct hires had a disproportionate impact on a protected group.

### 1. Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

---

[36] Mot. – ECF No. 32 at 7.

[37] *Id.* at 16.

[38] *Id.* at 26–29.

[39] *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record . . . [and documents that] the complaint necessarily relies upon[.]"); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may take judicial notice of 'matters of public record.'"); *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) ("A court may also take judicial notice of 'records and reports of administrative bodies.'").

[40] Consents – ECF Nos. 4, 16.

1    complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

2    'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

3    recitation of the elements of a cause of action will not do. Factual allegations must be enough to

4    raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up).

5    To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual

6    allegations, which when accepted as true, "state a claim to relief that is plausible on its face."

7    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health

8    Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not

9    the facts themselves." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe

10   Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual

11   allegations in the complaint "as true and construe them in the light most favorable to the plaintiff")

12   (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

13   court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

14   556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for

15   more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads

16   facts that are merely consistent with a defendant's liability, it stops short of the line between

17   possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

18   A court should construe *pro se* complaints liberally, "particularly in civil rights cases." *Hebbe v.

19   Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But a court "may not supply essential elements of the

20   claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th

21   Cir. 1982).

22   If a court dismisses a complaint, it should give leave to amend unless the "pleading could not

23   possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848

24   F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

### 2. Foreign Affairs Manual

In four claims, the plaintiff claims violations of the Department's policies in the Foreign Affairs Manual.[41] These claims fail because Title VII provides the exclusive remedy for employment discrimination by the federal government. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (discrimination in federal employment); *Chan v. Salas*, No. C 10-04348 MEJ, 2011 WL 2493730, at *3 (N.D. Cal. June 23, 2011) (race discrimination in federal employment).

Furthermore, the regulations in the Foreign Affairs Manual do not, in general, create a private right of action. *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 418 (9th Cir. 2009) ("[W]e have found nothing in [U.S. Dep't of State regulations codified at 22 C.F.R. § 71.6 and 7 Foreign Affs. Manual § 426.1(b)] which indicates that they create a private right of action, much less one enforceable in court through the Privacy Act."). The plaintiff concedes that the alleged violations of the Foreign Affairs Manual "are not specific claims but foundational evidence."[42]

The plaintiff's claims for violations of the Foreign Affairs Manual are dismissed with prejudice.

### 3. WARN Act

The plaintiff's fifth claim alleges a violation of the WARN Act.[43] The WARN Act provides "that covered employers provide employees (or their union) sixty-days notice of a plant closing or mass layoff." *Buck v. F.D.I.C.*, 75 F.3d 1285, 1289 (8th Cir. 1996) (citing 29 U.S.C. §§ 2101–09). According to Department of Labor regulations, for purposes of the WARN Act, covered employers do not include "[r]egular Federal, State, local and federally recognized Indian tribal governments." 20 C.F.R. § 639.3(a)(1)(ii). Consequently, the Department is not a covered employer under the WARN Act. *Cf. Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1047 (9th Cir. 2006) ("Thus it was the government, not [the corporate defendant], that ordered [the corporate defendant's] employees out of work at SJC Terminal C. This being so, the WARN Act does not apply.").

---

[41] FAC – ECF No. 25 at 18–26.
[42] Opp'n – ECF No. 35 at 8.
[43] FAC – ECF No. 25 at 26–28.

Because the federal government is not a covered employer under the Act, the plaintiff's WARN Act claim is dismissed with prejudice.

**4. Title VII**

The plaintiff's sixth claim is based on alleged violations of Title VII of the Civil Rights Act of 1964.[44] This claim is dismissed because the plaintiff's theory — that the Department violated Title VII because it did not give him special treatment because he has U.S. citizenship — is not actionable under Title VII because neither citizenship nor alienage is a protected category.

"To establish a *prima facie* case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The terms "adverse employment action" and "protected class" have specific meanings in Title VII cases. "[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up). The protected classes include "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Citizenship and alienage are not protected classes for purposes of Title VII. *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. at 95.

The standard for evaluating Title VII claims differs depending on whether it is challenged through a motion to dismiss or motion for summary judgment. On a motion for summary judgment, courts analyze Title VII claims using a burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*. *Young v. Buttigieg*, No. 19-cv-01411-JCS, 2021 WL 981305, at *6 (N.D. Cal. Mar. 16, 2021) (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)). Under this framework, the plaintiff must present a prima facie

---

[44] *Id.* at 28.

1    case of discrimination; then the burden shifts to the defendant to articulate a "nondiscriminatory

2    reason for the challenged action, and if the defendant does so, the plaintiff must then raise a triable

3    issue of material fact as to whether the defendant's proffered reasons are mere pretext for unlawful

4    discrimination." *Id.* (cleaned up).

5    This burden-shifting framework, however, is inapplicable at the motion-to-dismiss stage. *Id.*

6    (citing *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th Cir. 2019)). Furthermore, "a plaintiff's

7    allegations need not track each element of a prima facie case." *Id.* But to survive a motion to

8    dismiss, "a plaintiff's complaint still must include sufficient, nonconclusory allegations plausibly

9    linking the adverse action to discrimination." *Id.* (cleaned up); *see also Santiago v. DeJoy*, No. 20-

10   cv-1571 YGR, 2020 WL 6118528, at *4 (N.D. Cal. Oct. 16, 2020) ("While plaintiff is not required

11   to allege every fact necessary to establish a prima facie case of discrimination in the complaint, the

12   complaint must provide fair notice of the basis for the plaintiff's claims.") (citing *Swierkiewicz v.

13   Sorema N. A.*, 534 U.S. 506, 514 (2002)).

14   Given this pleading standard, "a plaintiff alleging discrimination under Title VII may proceed

15   under two theories of liability: disparate treatment or disparate impact." *Garcia v. Spun Steak Co.*,

16   998 F.2d 1480, 1484 (9th Cir. 1993).

### 4.1 Disparate Treatment

"Stating a claim for disparate treatment requires pleading facts giving rise to an inference that the employer intended to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021) (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012)). The plaintiff "must allege either direct evidence of discrimination, such as derogatory comments about his gender or race, or circumstantial evidence, which may include allegations that similarly situated individuals outside his protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination." *Austin v. City of Oakland*, No. 17-cv-03284 YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018) (cleaned up). For example, in *Liu*, the court held that mere awareness of a disparate impact is "not sufficient to infer [an] intent" to discriminate and dismissed a Title VII disparate-treatment claim. 551 F. Supp. 3d at 992. The *Liu* plaintiff had alleged that Uber's rating

1 system for drivers was discriminatory because the ratings incorporated the "racial biases of Uber
2 riders." *Id.* at 990. On the other hand, courts in this district have denied motions to dismiss where the
3 plaintiff identified "incidents where a retaliatory or discriminatory motive can plausibly be inferred."
4 *Williams v. Wolf*, No. 19-cv-00652-JCS, 2020 WL 1245369, at *10 (N.D. Cal. Mar. 16, 2020).

Furthermore, the discriminatory motive must be based on the plaintiff's status as a member of a protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d at 1028 (an element of a Title VII claim is "that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff"); *see also Santiago*, 2020 WL 6118528, at *4 (discriminatory intent can be established by citing "derogatory comments based on the protected status — or through circumstantial evidence — such as evidence that similarly situated individuals outside the plaintiff's protected class were treated more favorably or other circumstances giving rise to an inference that the action was because of discrimination").

Regarding the protected categories, Title VII does not prohibit discrimination based on citizenship status or alienage. *Espinoza*, 414 U.S. at 95; *Ventress v. Japan Airlines*, 486 F.3d 1111, 1116 n.5 (9th Cir. 2007). For example, in *Rai v. IBM Credit Corp.*, the court granted summary judgment for the defendant employer on the plaintiff's Title VII claim because the plaintiff admitted in a deposition that the only reason he "didn't become a regular employee [was] because [he] didn't have a green card." No. C 01-02283 CRB, 2002 WL 1808741, at *4 (N.D. Cal. Aug. 1, 2002).

Courts outside of this district have reached similar conclusions. In *Garcia v. Pompeo*, a court in the District of Columbia granted summary judgment to the defendant on a Title VII claim that was like the claim at issue here. No. 1:18-cv-01822 (APM), 2020 WL 134865, at *4 (D.D.C. Jan. 13, 2020). In *Garcia*, the plaintiff challenged the Department's practice of "conduct[ing] security *certifications* for all locally hired staff who did not require a security *clearance*, whether or not they were United States citizens." *Id.* at *2. The court held that the plaintiff had not stated a prima facie claim for Title VII discrimination because "his charge [was] that everyone, citizens and non-citizens alike, regardless of birthplace or national origin, were being treated the same, when he should have been advantaged as a U.S. citizen and not subject to a security review." *Id.* at *4. In short, the general rule is that Title VII does not prohibit discrimination based on citizenship status.

1    There is, however, a caveat to this rule: using citizenship as a pretext for prohibited racial or national-origin discrimination violates Title VII. *Espinoza*, 414 U.S. at 92 (Title VII "prohibits discrimination on the basis of citizenship whenever it has the purpose or effect of discriminating on the basis of national origin"). In *Espinoza*, the Court held that the defendant was not using citizenship as a proxy for race or national origin because "[t]here [was] no suggestion, for example, that the company refused to hire aliens of Mexican or Spanish-speaking background while hiring those of other national origins." *Id.* at 92 n.5.

Accordingly, to maintain a Title VII claim, the plaintiff must allege that the underlying animus was based on the plaintiff's national origin rather than the plaintiff's citizenship. *See*, *e.g.*, *Stankovic v. Newman*, No. 3:12-CV-399 RNC, 2013 WL 6842530, at *3 (D. Conn. Dec. 27, 2013) (granting motion to dismiss where the plaintiff did "not claim that [the defendant's] alleged preference for U.S. citizens was designed to discriminate against Australians"); *Samuel v. Metro. Police Dep't*, 258 F. Supp. 3d 27, 41 (D.D.C. 2017) (denying motion for summary judgment where the defendant did not show that the "alleged animus was rooted in [the plaintiff's] status as a non-citizen rather than her Canadian national origin").

Given the foregoing, the issue for the motion to dismiss is not whether the Department followed its internal policies, which would require a fact-intensive review of the plaintiff's employment history. Instead, the issue is whether the plaintiff has alleged facts that support an inference that the Department's conduct was driven by an underlying animus based on race or national origin. As currently pleaded, the plaintiff's discriminatory-treatment claim fails because his allegations do not meet this threshold.

The plaintiff does not allege that the Department treated non-Yemeni local employees better or directed any derogatory comments to him. In fact, the complaint describes the efforts of Department personnel to help the plaintiff by finding him a job.[45] Additionally, there are no allegations that the Department used his citizenship status as a proxy for his race or national origin.

---

[45] *Id.* at 9–10; EEO Investigative Aff., Ex. to FAC – ECF No. 25-1 at 137–38.

1    Nonetheless, the plaintiff alleges that his supervisors failed to give him extra benefits

2 compared to other local employees in Yemen because they "ignore[ed] regulations that protect[ed]

3 [him], as a U.S. citizen, but [were] not applicable to non-citizen Yemeni staff" and had a "mindset

4 that [he] was no more entitled to this protection than the Yemeni staff that were not U.S.

5 [c]itizens."[46] The plaintiff's theory is that he should have been treated better than other local

6 employees because he is a U.S. citizen. This theory is not an actionable discriminatory-treatment

7 claim. *Espinoza*, 414 U.S. at 92; *Garcia*, at *4 (dismissing claim where the plaintiff argued that

8 "he should have been advantaged as a U.S. citizen and not subject to a security review").

9    The plaintiff's opposition supports the conclusion that his claim is really a non-actionable

10 claim for citizenship discrimination and not an actionable national-origin claim. The plaintiff

11 repeatedly says that his claim is based on his citizenship status. For example, he contends that

12 because he is a U.S. citizen, he has "financial obligations that include the United States standard of

13 living."[47] Responding to the defendant's argument that he has not alleged derogatory comments

14 about his national origin, he cites a statement from a superior reminding him that he was "a

15 member of the RSO locally employed staff" and notes that his "U.S. citizen peers" received better

16 pay.[48] Concerning the possible existence of similarly situated people outside of his protected class

17 who were treated better, he implies that he viewed his protected class as other U.S. citizens when

18 he notes that "U.S. [c]itizens who I worked with were paid more, and had better benefits."[49]

19    Nonetheless, in the plaintiff's administrative complaint to the EEO, the plaintiff states that

20 "there was always an ARSO [Assistant Regional Security Officer] or two with a nasty attitude

21 towards me and the rest of the Yemeni, non-citizen staff."[50] This comment could be interpreted as

22 an allegation that Department personnel has a "nasty" or discriminatory attitude toward the

---

[46] FAC – ECF No. 25 at 22–23.

[47] Opp'n – ECF No. 35 at 17.

[48] *Id.* at 16.

[49] *Id.* at 15.

[50] EEO Investigative Aff., Ex. to FAC – ECF No. 25-1 at 126.

ORDER – No. 21-cv-07713-LB           13

1 plaintiff because he, like the rest of the local embassy staff, was Yemeni. Such a theory may be
2 able to survive a motion to dismiss.

3 In sum, the plaintiff's discriminatory treatment theory, as currently pleaded, is based on his U.S. citizenship and, thus, is not actionable. *Espinoza*, 414 U.S. at 92. But there is a possibility that the plaintiff could cure the defects in the complaint a plead a plausible claim of discrimination under Title VII. This possibility warrants granting leave to amend. *United Healthcare Ins. Co.*, 848 F.3d at 1182.

### 4.2 Disparate Impact

To the extent the plaintiff attempts to assert an alternative disparate-impact theory based on the Department's hiring practices, this theory also fails.

"To bring a disparate impact claim, a plaintiff must plead: (1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." *Thomas v. S.F. Hous. Auth.*, No. 16-cv-03819-CRB, 2018 WL 1184762, at *4 (N.D. Cal. Mar. 7, 2018) (cleaned up), *aff'd*, 765 F. App'x 368 (9th Cir. 2019); *accord Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021).

"Plaintiffs need not prove the prima facie elements to survive a motion to dismiss, but must plead the general elements to make a claim facially plausible." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019). Furthermore, a plaintiff does not need to establish a discriminatory motive to succeed on a disparate-impact theory. *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986) (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

Because the Department's practice of distinguishing between local employees and direct hires is neutral, the issues are whether the practice has a significantly disproportionate impact and whether there is a causal connection between the challenged practice and any disproportionate impact. Regarding disproportionate impact, statistical data is typically used to prove this element. *Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) ("A prima facie case of disparate impact is usually accomplished by statistical evidence showing that an employment practice selects

1  members of a protected class in a proportion smaller than their percentage in the pool of actual

2  applicants.") (cleaned up). "But at the pleading stage, allegations of a disparity need not be so

3  precise." *Liu*, 551 F. Supp. 3d at 991.

4  For instance, the plaintiff may point to "visually obvious inconsistencies between the racial

5  composition of the defendant's employees and that of the surrounding population." *Id.* (citing

6  *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1002 n.1 (7th Cir. 2019)). The plaintiff may also rely

7  on personal experiences, such as an awareness that "female colleagues received lower

8  performance evaluations despite performing as well as or better than their male peers," to establish

9  disproportionate impact. *Id.*; *see Arnold v. Sessions*, No. 4:18-cv-00553-KAW, 2018 WL

10  6728008, at *8 (N.D. Cal. Dec. 21, 2018) ("[T]he 'upper end' for sufficiently alleging the

11  'significantly adverse or disproportionate impact on persons of a particular type' prong is met by

12  pleading some form of statistical data.").

13  Concerning the requirement to plead that the neutral practice caused the disparate impact, the

14  requirement can be satisfied by alleging a plausible theory of causation. For example, the court in

15  *Lee v. Hertz Corp.* held that the plaintiff adequately pleaded causation by alleging that a neutral

16  background check policy that barred all applicants with a conviction record had a disproportionate

17  impact based on allegations that "Latinos were arrested and convicted of crimes at more than

18  double the rates of whites." 330 F.R.D. at 561. The causation element can also be pleaded by

19  citing scientific literature describing the racial bias associated with purportedly race-neutral

20  practices like customer rating programs. *Liu*, 551 F. Supp. 3d at 991–92.

21  The plaintiff's complaint does not plead a plausible Title VII disparate-impact claim. The plaintiff

22  has not alleged any facts showing that the Department's distinction between local employees and

23  direct hires had a disproportionate impact on any protected group. The complaint does not cite any

24  data, scientific literature, or personal experiences to support the theory that the Department's local-

25  employee hiring practice had a discriminatory impact on a specific protected group.

26  Instead of citing data or experience, the plaintiff speculates that the practice is discriminatory

27  because it must result in pay differences for Department employees in "first world" and "third

28

world" countries.[51] This theory is flawed because it depends on comparing pay for individuals who are stationed in different diplomatic facilities under different conditions and may be performing different tasks. This is not a valid comparison for purposes of analyzing a discrimination claim. Individuals in different diplomatic facilities in different countries are not necessarily "similarly situated," and the disparate-impact analysis depends on comparing the treatment of those who are "similarly situated." *See*, *e.g.*, *Moussouris*, 2016 WL 6037978, at *6 (allegation that the plaintiffs "and similarly situated women performed as well as or better than their male peers but received inferior performance evaluations" was sufficient to state a claim on a disparate impact theory).

While the court liberally construes the plaintiff's complaint, it cannot add facts that the plaintiff has not alleged. *Ivey*, 673 F.2d at 268. The plaintiff's conclusory and speculative disparate impact theory, as currently pleaded, is untenable.

## CONCLUSION

The Department's Motion to Dismiss is granted and the plaintiff's claims based on the Foreign Affairs Manual and the WARN Act are dismissed with prejudice. The plaintiff's Title VII claim is dismissed with leave to amend.

The plaintiff may file an amended complaint within 28 days to cure the deficiencies on his Title VII claim. If the plaintiff files an amended complaint, he must attach as an exhibit a blackline of the amended complaint against the current complaint.

**IT IS SO ORDERED.**

Dated: July 21, 2022

LAUREL BEELER
United States Magistrate Judge

---

[51] FAC – ECF No. 25 at 31.