United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ASAM ALHAYOTI,

Plaintiff,

v.

ANTONY BLINKEN, et al.,

Defendants.

Case No. 21-cv-07713-LB

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 62

**INTRODUCTION**

The plaintiff worked for the U.S. Embassy in Sana'a, Yemen, and the U.S. Department of State paid him the local prevailing wage under its internal policies.[1] After the Embassy closed following the outbreak of war in Yemen, the plaintiff, who holds citizenship in the United States and Yemen, returned to the U.S. and continued to receive a salary based on the prevailing wage in Yemen.[2] The plaintiff claims that the defendant (Antony Blinken, in his official capacity as Secretary of the U.S. Department of State) discriminated against him, in violation of Title VII of the Civil Rights Act of 1964.[3] The court dismisses the complaint — as it did an earlier complaint

[1] Third Am. Compl. (TAC) – ECF No. 57 at 5. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 15–17.

[3] *Id.* at 23.

— because the plaintiff's Title VII claim is based on the nonactionable theory that the plaintiff's U.S. citizenship entitled him to extra benefits relative to other local employees in Yemen.[4] Because this is the plaintiff's fourth complaint, the dismissal is with prejudice.

## STATEMENT

The plaintiff is a dual citizen of the United States and Yemen. In 2010, the Department hired him as a Foreign Service National Investigator at the U.S. Embassy in Sana'a, Yemen, under the local-employee (LE) staff category. The local-employee designation meant that the plaintiff was paid the local prevailing wage in Yemen. Because the plaintiff was also a U.S. citizen, the Foreign Service Act required that — even though he was hired in the local-employee category — he receive no less than the federal minimum wage.[5] The local-employee category contrasts with the direct-hire-employee category because direct-hire employees are appointed by the Secretary of State under general U.S. Government appointment rules.[6] Direct-hire employees generally receive higher pay.[7] According to the State Department, "[t]here is no process for a transfer from LE Staff to a U.S. direct hire position."[8]

The earlier order recounts the plaintiff's accomplishments: he performed well and received promotions and excellent evaluations.[9] The U.S. Embassy in Sana'a ultimately suspended operations in February 2015, and United States direct-hire employees were evacuated. In March 2015, the plaintiff sent his wife and children back to the United States. He remained in Yemen working for the Department until October 2015, when he too returned to the United States. After arriving back in the United States, he continued to work for the Department by communicating with

---

[4] Order – ECF No. 40.

[5] TAC – ECF No. 57 at 5; Admin. Compl. to Off. of Civ. Rts. – ECF No. 25-1 at 3; Mot. – ECF No. 62 at 8–9 (citing 22 U.S.C. § 3968(a)(1)).

[6] Off. of Civ. Rts. Investigative Rep. – ECF No. 25-1 at 111; U.S. Dep't of State Foreign Affs. Manual § 7121, https://fam.state.gov.

[7] EEO Investigative Aff. – ECF No. 25-1 at 258.

[8] Admin. Compl. to Off. of Civ. Rts. – ECF No. 25-1 at 10.

[9] Order – ECF No. 40 at 3.

United States District Court
Northern District of California

contacts in Yemen by phone. Nonetheless, the Department placed him on "non-caretaker" or inactive status.[10] In October 2015, the Department offered him a Temporary Duty Assignment in Saudia Arabia, but he declined because his being in Saudia Arabia would make him a "traitor" in the eyes of his Yemeni contacts.[11]

By summer 2016, the plaintiff realized that he would not get a Temporary Duty Travel assignment in a "neutral country" and asked Special Agent Jeremy Clark for better pay and benefits. Mr. Clark said that there was no provision to change his pay scale but helped the plaintiff obtain a part-time consulting position with a private company, AC4S.[12]

In 2018, the Embassy in Sana'a began preparing for a reduction in force of Yemen LE staff.[13] But in the period before that, during 2017, there was excitement (by Mr. Clark and David McComas at AC4S) about a coup that a former president would attempt against the regime. The plaintiff's contacts at AC4S told him that if the coup was successful, then he would return to Yemen with a well-paying job. The coup failed: the former president was assassinated. The plaintiff's understanding of security risks were credited before the failed coup but discounted after it because the U.S. gave up on a speedy conclusion to the war. At this point, the plaintiff realized that the respectful treatment he had received was due only to the Department's need for his abilities. The failed coup ended that treatment, and he "went from being an award winning star employee to just a 'local hire,' according to [his supervisor] Joshua Godbois."[14] Until that point (when the Department no longer needed him), he "was treated like a valuable employee that they needed and respected." The plaintiff received a Reduction-in-Force Notice in June 2019, and his employment with the State Department ended on July 21, 2019.[15]

---

[10] TAC – ECF No. 57 at 15–16; Admin. Compl. to Off. of Civ. Rts. – ECF No. 25-1 at 12.

[11] TAC – ECF No. 57 at 16; EEO Investigative Aff. – ECF No. 25-1 at 137–38.

[12] TAC – ECF No. 57 at 17–18.

[13] Notice – ECF No. 25-3 at 1–2..

[14] TAC – ECF No. 57 at 19–20.

[15] *Id.* at 20–22; Notice – ECF No. 25-3 at 1–2.

The plaintiff's view is that he witnessed discriminatory treatment of Yemenis by American staff throughout his employment, and once the Department did not need him, he received unwarranted "disparate treatment" that did not reflect his award-winning work history. "It is this sudden change in treatment that is evidence of disparate treatment towards [him] based on [his] Yemini descent."[16]

Earlier in the complaint, the plaintiff alleges that his first RSO John Taylor said, "[w]e need to get these Yemeni monkeys in line" (referring to a lack of cooperation from Yemeni government officials). Mr. Taylor had many such outbursts (though never specifically leveled insults at the plaintiff).[17] The plaintiff saw other discriminatory behavior toward the Yemeni people by American staff members.[18] Every supervisor he had told him that they could not adjust his compensation unless he returned to the U.S. and was hired from there (a representation that he characterizes as a lie).[19]

The plaintiff also alleges that he witnessed American employees getting away with crimes: (1) an employee named Adam Dolan who was investigated for his behavior at the embassy in Yemen because he was arrested in Brazil when he pushed a woman out of a moving car; (2) someone asking him to use his contacts to help an FBI agent who — while driving drunk — killed a father of five; (3) another request to help someone who killed a pedestrian while rushing to work; (4) an embassy-convoy car that ran over a little girl's foot; (5) a prostitution ring of underage girls brought to the embassy; and (6) payoffs by Yemeni property owners to American employees for housing.[20] The point of these allegations is that the plaintiff "would not be surprised if it was a personal decision [by Adam Dolan] to discriminate against" him by putting him "in the Yemeni category instead of the U.S. [c]itizen category."[21]

---

[16] TAC – ECF No. 57 at 21.

[17] *Id.* at 9–10.

[18] *Id.* at 10.

[19] *Id.* at 11.

[20] *Id.* at 8–9.

[21] *Id.* at 8.

This is the plaintiff's fourth complaint. He filed his original complaint in October 2021 and an amended complaint in April 2022.[22] In its order dismissing the second amended complaint, the court held that the plaintiff's sole remedy was under Title VII, dismissed claims brought under Department policies and the WARN Act with prejudice, and dismissed the Title VII claim because he claimed only that the Department treated him differently because of his U.S. citizenship, which is not an actionable claim. The dismissal was without prejudice to allow the plaintiff to allege facts to support his Title VII claim.[23] The plaintiff filed a second amended complaint and then, pursuant to the parties' stipulation, the operative third amended complaint claiming Title VII violations based on disparate treatment and disparate impact.[24]

The government moved to dismiss under Rule 12(b)(6) for failure to state a claim.[25] The court can decide the dispute motion without oral argument. N.D. Cal. Civ. L.R. 7-1(b). The court has federal-question jurisdiction. 28 U.S.C. § 1331. The parties consented to magistrate-judge jurisdiction.[26] *Id.* § 636(c).

**LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

[22] Compl. – ECF No. 1; FAC – ECF No. 25.

[23] Order – ECF No. 40.

[24] Second Am. Compl. – ECF No. 44; Stipulation – ECF No. 51; TAC – ECF No. 57 at 23.

[25] Mot. – ECF No. 62.

[26] Consents – ECF Nos. 4, 16.

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should give leave to amend if the plaintiff could "articulate a cognizable legal theory if given the opportunity." *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017).

## ANALYSIS

The plaintiff's claim is based on alleged violations of Title VII of the Civil Rights Act of 1964. The court dismisses the claim because the plaintiff's core theory — that the Department violated Title VII by not giving him special treatment for his U.S. citizenship — is not actionable under Title VII because citizenship and alienage are not protected categories.

"To establish a *prima facie* case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or

her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The terms "adverse employment action" and "protected class" have specific meanings in Title VII cases. "[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (cleaned up). The protected classes include "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Citizenship and alienage are not protected classes for purposes of Title VII. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973).

The standard for evaluating Title VII claims differs depending on whether it is challenged through a motion to dismiss or motion for summary judgment. On a motion for summary judgment, courts analyze Title VII claims using a burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp.*. *Young v. Buttigieg*, No. 19-cv-01411-JCS, 2021 WL 981305, at *6 (N.D. Cal. Mar. 16, 2021) (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)). Under this framework, the plaintiff must present a prima facie case of discrimination; then the burden shifts to the defendant to articulate a "nondiscriminatory reason for the challenged action, and if the defendant does so, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons are mere pretext for unlawful discrimination." *Id.* (cleaned up).

This burden-shifting framework, however, is inapplicable at the motion-to-dismiss stage. *Id.* (citing *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th Cir. 2019)). Furthermore, "a plaintiff's allegations need not track each element of a prima facie case." *Id.* But to survive a motion to dismiss, "a plaintiff's complaint still must include sufficient, nonconclusory allegations plausibly linking the adverse action to discrimination." *Id.* (cleaned up); *see also Santiago v. DeJoy*, No. 20-cv-1571 YGR, 2020 WL 6118528, at *4 (N.D. Cal. Oct. 16, 2020) ("While plaintiff is not required to allege every fact necessary to establish a prima facie case of discrimination in the complaint, the

United States District Court
Northern District of California

complaint must provide fair notice of the basis for the plaintiff's claims.") (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002)).

Given this pleading standard, "a plaintiff alleging discrimination under Title VII may proceed under two theories of liability: disparate treatment or disparate impact." *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1484 (9th Cir. 1993).[27]

**1. Disparate Treatment**

"Stating a claim for disparate treatment requires pleading facts giving rise to an inference that the employer intended to discriminate against the protected group." *Liu v. Uber Techs. Inc.*, 551 F. Supp. 3d 988, 992 (N.D. Cal. 2021) (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012)). The plaintiff "must allege either direct evidence of discrimination, such as derogatory comments about his gender or race, or circumstantial evidence, which may include allegations that similarly situated individuals outside his protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination." *Austin v. City of Oakland*, No. 17-cv-03284 YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018) (cleaned up). For example, in *Liu*, the court held that mere awareness of a disparate impact is "not sufficient to infer [an] intent" to discriminate and dismissed a Title VII disparate-treatment claim. 551 F. Supp. 3d at 992. The plaintiff had alleged that Uber's rating system for drivers was discriminatory because the ratings incorporated the "racial biases of Uber riders." *Id.* at 990. On the other hand, courts in this district have denied motions to dismiss where the plaintiff identified "incidents where a retaliatory or discriminatory motive can plausibly be inferred." *Williams v. Wolf*, No. 19-cv-00652-JCS, 2020 WL 1245369, at *10 (N.D. Cal. Mar. 16, 2020).

Furthermore, the discriminatory motive must be based on the plaintiff's status as a member of a protected class. *Cornwell*, 439 F.3d at 1028 (an element of a Title VII claim is "that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to

---

[27] Order – ECF No. 40 at 9–10.

the same protected class as the plaintiff"); *see also Santiago*, 2020 WL 6118528, at *4 (discriminatory intent can be established by citing "derogatory comments based on the protected status — or through circumstantial evidence — such as evidence that similarly situated individuals outside the plaintiff's protected class were treated more favorably or other circumstances giving rise to an inference that the action was because of discrimination").[28]

Regarding the protected categories, Title VII does not prohibit discrimination based on citizenship status or alienage. *Espinoza*, 414 U.S. at 95; *Ventress v. Japan Airlines*, 486 F.3d 1111, 1116 n.5 (9th Cir. 2007). For example, in *Rai v. IBM Credit Corp.*, the court granted summary judgment for the defendant employer on the plaintiff's Title VII claim because the plaintiff admitted in a deposition that the only reason he "didn't become a regular employee [was] because [he] didn't have a green card." No. C 01-02283 CRB, 2002 WL 1808741, at *4 (N.D. Cal. Aug. 1, 2002).

Courts outside of this district have reached similar conclusions. In *Garcia v. Pompeo*, a court in the District of Columbia granted summary judgment to the defendant on a Title VII claim that was like the claim at issue here. No. 1:18-cv-01822 (APM), 2020 WL 134865, at *4 (D.D.C. Jan. 13, 2020). In *Garcia*, the plaintiff challenged the Department's practice of "conduct[ing] security *certifications* for all locally hired staff who did not require a security *clearance*, whether or not they were United States citizens." *Id.* at *2. The court held that the plaintiff had not stated a prima facie claim for Title VII discrimination because "his charge [was] that everyone, citizens and non-citizens alike, regardless of birthplace or national origin, were being treated the same, when he should have been advantaged as a U.S. citizen and not subject to a security review." *Id.* at *4. In short, Title VII generally does not prohibit discrimination based on citizenship status.

There is a caveat to this rule: using citizenship as a pretext for prohibited racial or national-origin discrimination violates Title VII. *Espinoza*, 414 U.S. at 92 (Title VII "prohibits discrimination on the basis of citizenship whenever it has the purpose or effect of discriminating on the basis of national origin"). In *Espinoza*, the Court held that the defendant was not using citizenship as a proxy for race or national origin because "[t]here [was] no suggestion, for

[28] *Id.* at 10–11.

United States District Court
Northern District of California

example, that the company refused to hire aliens of Mexican or Spanish-speaking background while hiring those of other national origins." *Id.* at 92 n.5.

Accordingly, to maintain a Title VII claim, the plaintiff must allege that the underlying animus was based on the plaintiff's national origin rather than the plaintiff's citizenship. *See*, *e.g.*, *Stankovic v. Newman*, No. 3:12-CV-399 RNC, 2013 WL 6842530, at *3 (D. Conn. Dec. 27, 2013) (granting motion to dismiss where the plaintiff did "not claim that [the defendant's] alleged preference for U.S. citizens was designed to discriminate against Australians"); *Samuel v. Metro. Police Dep't*, 258 F. Supp. 3d 27, 41 (D.D.C. 2017) (denying motion for summary judgment where the defendant did not show that the "alleged animus was rooted in [the plaintiff's] status as a non-citizen rather than her Canadian national origin").

Given the foregoing, the issue is whether the plaintiff has alleged facts that support an inference that the Department's conduct was driven by an underlying animus based on race or national origin. The plaintiff's discriminatory-treatment claim fails because his allegations do not meet this threshold.

The plaintiff does not allege that the Department treated non-Yemeni local employees better or directed any derogatory comments to him.[29] To the contrary, the plaintiff contends that he was treated well until the failed coup, which suggests that any poor treatment was a result of operational concerns. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court is not "required to accept as true allegations that are . . . unwarranted deductions of fact[] or unreasonable inferences"). Moreover, occasionally offensive outbursts like those the plaintiff described are not an adverse employment action when they do not materially affect the conditions of the plaintiff's employment. *Reyes v. S.F. Unified Sch. Distr.*, No. 11-cv-4628-YGR, 2012 WL 4343784, at *8 (N.D. Cal. Sept. 20, 2012) ("While perhaps unprofessional and inappropriate language for a meeting . . . , the comment does not transform into an adverse

---

[29] The government also points out that the plaintiff did not administratively exhaust any claims as to discrete acts before 2019 and thus did not timely exhaust his administrative remedies. 29 C.F.R. § 1614.105(a)(1) (must initiate contact with an EEO counselor within 45 days of the matter alleged to be discriminatory); *Leong v. Potter*, 347 F.3d 1117, 1121–22 (9th, Cir. 2003).

employment action."). Additionally, there are no allegations that the Department used his citizenship status as a proxy for his race or national origin; the Department recognized the plaintiff's overall stellar performance and helped him find a part-time consulting job.

The plaintiff's opposition reinforces the conclusion that his claim remains that he should have received more pay because he is a U.S. citizen. Responding to the government's argument, he asserts that there are two important differences between his employment and other Yemeni LE employees: (1) as a U.S. citizen, he had to receive the minimum wage and (2) he paid taxes.[30] He thus reasserts (as he did in his earlier complaint) his view that he is protectas a U.S. citizen, he challenges other U.S. citizens' receiving better benefits, and he asserts that he should have been treated better than other local employees because he is a U.S. citizen.[31] This theory is not an actionable discriminatory-treatment claim under Title VII. *Espinoza*, 414 U.S. at 92; *Garcia*, 2020 WL 134865, at *4 (dismissing claim where the plaintiff argued that "he should have been advantaged as a U.S. citizen and not subject to a security review").

In sum, the plaintiff's discriminatory-treatment theory is based on his U.S. citizenship and thus is not actionable. *Espinoza*, 414 U.S. at 92.

**2. Disparate Impact**

The plaintiff's disparate-impact theory also fails.

"To bring a disparate impact claim, a plaintiff must plead: (1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." *Thomas v. S.F. Hous. Auth.*, No. 16-cv-03819-CRB, 2018 WL 1184762, at *4 (N.D. Cal.

[30] Opp'n – ECF No. 35 at 2–3.

[31] *Id.*

Mar. 7, 2018) (cleaned up), *aff'd*, 765 F. App'x 368 (9th Cir. 2019); *accord Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021).[32]

"Plaintiffs need not prove the prima facie elements to survive a motion to dismiss, but must plead the general elements to make a claim facially plausible." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019). Furthermore, a plaintiff does not need to establish a discriminatory motive to succeed on a disparate-impact theory. *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir. 1986) (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

Because the Department's practice of distinguishing between local employees and direct hires is neutral, the issues are whether the practice has a significantly disproportionate impact and whether there is a causal connection between the challenged practice and any disproportionate impact. Regarding disproportionate impact, statistical data is typically used to prove this element. *Stout v. Potter*, 276 F.3d 1118, 1122 (9th Cir. 2002) ("A prima facie case of disparate impact is usually accomplished by statistical evidence showing that an employment practice selects members of a protected class in a proportion smaller than their percentage in the pool of actual applicants.") (cleaned up). "But at the pleading stage, allegations of a disparity need not be so precise." *Liu*, 551 F. Supp. 3d at 991.

For instance, the plaintiff may point to "visually obvious inconsistencies between the racial composition of the defendant's employees and that of the surrounding population." *Id.* (citing *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1002 n.1 (7th Cir. 2019)). The plaintiff may also rely on personal experiences, such as an awareness that "female colleagues received lower performance evaluations despite performing as well as or better than their male peers," to establish disproportionate impact. *Id.*; *see Arnold v. Sessions*, No. 4:18-cv-00553-KAW, 2018 WL 6728008, at *8 (N.D. Cal. Dec. 21, 2018) ("[T]he 'upper end' for sufficiently alleging the 'significantly adverse or disproportionate impact on persons of a particular type' prong is met by pleading some form of statistical data.").

---

[32] Order – ECF No. 40 at 14–16.

Concerning the requirement to plead that the neutral practice caused the disparate impact, the requirement can be satisfied by alleging a plausible theory of causation. For example, the court in *Lee* held that the plaintiff adequately pleaded causation by alleging that a neutral background check policy that barred all applicants with a conviction record had a disproportionate impact based on allegations that "Latinos were arrested and convicted of crimes at more than double the rates of whites." 330 F.R.D. at 561. The causation element can also be pleaded by citing scientific literature describing the racial bias associated with purportedly race-neutral practices like customer rating programs. *Liu*, 551 F. Supp. 3d at 991–92.

The plaintiff's complaint does not plead a plausible Title VII disparate-impact claim. The plaintiff has not alleged any facts showing that the Department's distinction between local employees and direct hires had a disproportionate impact on any protected group. Instead, the plaintiff continues to assert that the LE hiring category has a disproportionate impact on individuals based on their national origin because it results in lower pay for U.S. citizens if they have the local national origin.[33] As the court said previously, this theory is flawed because it depends on comparing pay for individuals who are stationed in different diplomatic facilities under different conditions and who may be performing different tasks. This is not a valid comparison for purposes of analyzing a discrimination claim. Individuals in different diplomatic facilities in different countries are not necessarily "similarly situated." *See, e.g.*, *Moussouris*, 2016 WL 6037978, at *6 (allegation that the plaintiffs "and similarly situated women performed as well as or better than their male peers but received inferior performance evaluations" was sufficient to state a claim on a disparate-impact theory).

## CONCLUSION

The court dismisses the complaint without leave to amend because — despite having the opportunity to do so — the plaintiff did not cure the deficiencies identified in the court's earlier order.

[33] TAC – ECF No. 57 at 28.

United States District Court
Northern District of California

This resolves ECF No. 62.

**IT IS SO ORDERED.**

Dated: July 28, 2023

LAUREL BEELER
United States Magistrate Judge